| | |
|---|---|
| DERRICK DESHAWN NIXON, ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| ) | |
| v. ) | **MEMORANDUM &** |
| ) | **RECOMMENDATION** |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

This matter is before the court on Petitioner's motion to vacate pursuant to 28 U.S.C. § 2255, which has been referred to the undersigned for memorandum and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Rules 8(b) and 10 of the Rules Governing Section 2255 Proceedings. The Government has moved to dismiss Petitioner's motion. To further develop the record, an evidentiary hearing was held on January 7, 2014, at which the Government and Petitioner, with counsel, appeared. For the reasons stated below, it is recommended that the Government's motion be granted and Petitioner's motion to vacate be denied.

## BACKGROUND

On January 4, 2010, Petitioner pled guilty, pursuant to a plea agreement, to possession with intent to distribute five grams or more of cocaine base, in violation of 21 U.S.C. § 841(1). (Mem. Plea Agreement [DE #22].) In the plea agreement, Petitioner agreed

> to waive knowingly and expressly . . . all rights . . . to appeal whatever sentence is imposed, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to [Petitioner] at the time of [Petitioner's] guilty plea.

(*Id.* ¶ 2(c).)

At the time Petitioner pled guilty, the law in the Fourth Circuit was well settled that an offense under North Carolina's Structured Sentencing Act was punishable by a term exceeding one year if the maximum aggravated sentence that *any defendant* could receive exceeded twelve months. *See United States v. Jones*, 195 F.3d 205 (4th Cir. 1999), *abrogated by United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011). Thus, an individual could have a prior conviction "punishable by a term exceeding one year" even if he could not have received a sentence of that duration.

Based upon then-existing Fourth Circuit precedent, Petitioner's prior state court convictions for sale of cocaine, sale of marijuana, sale or delivery of cocaine, possession with intent to sell and deliver cocaine, and sale of a schedule II controlled substance qualified as felony offenses for federal sentencing purposes. As such, Petitioner was designated a career offender subject to sentence enhancement under U.S. Sentencing Guideline § 4B1.1. As a consequence of his status as a career offender, Petitioner's offense level was increased four levels and his Criminal History Category was increased from V to VI. On April 14, 2010, Petitioner was sentenced to a term of 188 months. Petitioner appealed his conviction, and the Fourth Circuit dismissed his appeal on February 23, 2011.

Sixteen months after Petitioner's sentencing, the Fourth Circuit issued an *en banc* decision overruling its prior precedent. In *United States v. Simmons*, 649 F.3d 237 (4th Cir. 2011), the Fourth Circuit held that a court must look to the maximum punishment that a particular offender could have received in determining whether a prior conviction under North Carolina's Structured Sentencing Act may serve as a predicate felony for federal sentencing purposes. *Simmons*, 649 F.3d at 243-46.

Relying on *Simmons*, Petitioner moves to vacate his sentence, challenging his classification as a career offender. The Government initially moved to dismiss Petitioner's claim as untimely, and the court denied the Government's motion, finding that Petitioner's claim was timely filed pursuant to § 2255(f)(1). The Government now moves to dismiss Petitioner's claim as barred by his plea waiver and on the separate ground that non-constitutional errors in the application of the sentencing guidelines are not legally cognizable in § 2255 proceedings.

## **DISCUSSION**

### I.     **Plea Waiver**

The Government first moves to dismiss Petitioner's claim as barred by the plea waiver contained in his plea agreement. A criminal defendant may waive his right to appeal or collaterally attack his conviction and sentence. *United States v. Lemaster*, 403 F.3d 216, 220 (4th Cir. 2005). Appeal waivers are valid and enforceable where they are knowingly and voluntarily made. *Id.* However, such waivers are not without limits. "For example, a defendant [can] not be said to have waived his right to appellate review of a sentence imposed in excess of the maximum penalty provided by statute or based on a constitutionally impermissible factor such as race." *United States v. Marin,* 961 F.2d 493, 496 (4th Cir. 1992). Such errors could not

have been reasonably contemplated at the time of plea and, therefore, fall outside the scope of a plea waiver. *United States v. Blick*, 408 F.3d 162, 171-72 (4th Cir. 2005).

Petitioner offers three separate reasons his claim is not barred by the plea waiver. First, Petitioner asserts that the plea waiver is void or voidable due to mutual mistake. Second, Petitioner maintains that ineffective assistance of counsel renders his plea agreement invalid. Third, Petitioner contends that his claim falls outside the scope of the plea waiver because it could not have been reasonably contemplated at the time of sentencing and application of the waiver would result in a miscarriage of justice.

### A.     Mutual Mistake

Petitioner argues his plea agreement is void or voidable because it is based on the parties' mutual mistake concerning the legal effect of Petitioner's prior state convictions. The law of contracts, which is instructive though not determinative in construing plea agreements, *see United States v. Dawson*, 587 F.3d 640, 645 (4th Cir. 2009), provides that a contract is voidable by the adversely affected party if there is a mistaken belief by both parties concerning "the facts as they exist at the time of the making of the contract." Restatement (Second) of Contracts §§ 151, at comment a, 152 (1981). "Facts" include the law in existence at the time the contract is made. *Id.* at comment b. However, predictions or judgments about events to occur in the future do not constitute a mistake. *Id.*

The facts alleged by Petitioner do not support a claim of mutual mistake. Both parties were aware of the facts, as well as the law, as they existed at the time the plea agreement was entered. *Simmons*' subsequent change in the law regarding the classification of Petitioner's prior state convictions does not constitute a mutual mistake allowing Petitioner to void the plea agreement.

4

### B. Ineffective Assistance of Counsel

Petitioner next contends that his plea waiver is not valid because it is tainted by ineffective assistance of counsel. To establish ineffective assistance of counsel, a petitioner must show that counsel's representation fell below an objective standard of reasonableness and there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984). The reasonableness of counsel's performance must be judged according to the specific facts of the case at the time of counsel's conduct. *Id.* at 690. There is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance, and the petitioner bears the burden of demonstrating that counsel's assistance was neither reasonable nor the product of sound strategy. *Id.* at 689.

Petitioner asserts that the plea agreement provided him no benefit and his attorney was, therefore, ineffective in advising him to plead pursuant to the plea agreement as opposed to pleading "straight up," in which event Petitioner would not be barred from pursuing his *Simmons* claim. Contrary to Petitioner's argument, the testimony presented at the evidentiary hearing in this case demonstrates that the plea agreement provided substantial benefits to Petitioner. Petitioner was represented in this case by Gayle Adams ("Adams"), who was an experienced Assistant Federal Public Defender and is now a North Carolina Superior Court Judge.[1] Adams testified that the Government intended to file a 21 U.S.C. § 851 enhancement against Petitioner, which would have increased the statutory minimum from five to ten years' imprisonment. Adams negotiated the plea agreement in order to avoid the enhancement, as well as to provide

---

[1] Assistant Federal Public Defender James A. Martin stood in for Adams at Petitioner's arraignment but does not appear to have been substantially involved in Petitioner's case, though he testified he would have spoken with Petitioner briefly prior to the Rule 11 colloquy.

5

Petitioner the opportunity for a § 5K1.1 sentence reduction. Pursuant to the plea agreement, Petitioner was debriefed and provided information concerning his drug activities and the activities of other individuals. When asked about his brother's involvement, however, Petitioner refused to provide further information.

According to Adams, Petitioner's refusal to cooperate presented a significant dilemma. Not only did it mean that Petitioner would not receive a § 5K1.1 reduction, but it also constituted a breach of Petitioner's agreement to cooperate "fully" as set forth in the plea agreement. During his debriefing, Petitioner had given substantial information concerning his prior drug activities, which under the plea agreement could not be used against him. If, however, the Government sought to avoid the plea agreement based upon Petitioner's breach, the information provided by Petitioner could be used against him in determining the drug quantity attributable to Petitioner. Adams testified that she spoke with Petitioner and advised him that if the information provided during debriefing were used against him, Petitioner would face an offense level substantially higher than that of a career offender. Based on this advice, Petitioner decided to proceed without challenging the career offender enhancement or raising any other issues that might alert the Government to the potential for a higher sentence.

Petitioner does not dispute that, if found to have breached his plea agreement, he faced a potentially higher guideline range based on the drug quantity admitted in his debriefing. Rather, his argument is that Adams' performance was deficient because she did not tell him that his prior state convictions might not qualify as predicate felonies under the career offender guideline and failed to take other action to preserve the issue for review.

The evidence presented at the hearing in this matter demonstrates that Adams' performance was not deficient. Throughout the proceedings, Adams sought to obtain the lowest

6

possible sentence for Petitioner by avoiding a § 851 enhancement and offering Petitioner the opportunity to obtain a § 5K1.1 reduction through cooperation. When Petitioner failed to live up to his bargain, Adams sought to ameliorate the damage caused by Petitioner, counseling him that challenging the career offender enhancement may result in imposition of a potentially higher guideline range based on the drug quantity admitted by Petitioner. There is no evidence to suggest that, at the time of Petitioner's sentencing, the prevailing practice among attorneys in the bar was to advise criminal defendants that a change in the law may potentially affect their classification as a career offender. That is not surprising given that Petitioner was sentenced more than a year prior to *Simmons* and two months before *Carachuri*. Petitioner has failed to meet his burden of demonstrating that his attorney's performance was deficient.

### C.   Scope of Plea Waiver

Petitioner further contends that the court should consider his challenge to the career offender enhancement because his claim is outside the scope of his plea waiver. With regard to this claim, Petitioner relies on case law establishing that a plea waiver cannot be said to bar an individual from obtaining relief from an illegal sentence, such as where the sentence was imposed in excess of the maximum penalty provided by statute, was based on a constitutionally impermissible factor such as race, or was the result of a post-plea violation of the right to counsel. *See, e.g., United States v. Thornsbury*, 670 F.3d 532, 539-40 (4th Cir. 2011). To do so would result in a fundamental miscarriage of justice.

Alleged errors in interpreting or applying the sentencing guidelines, such as the career offender enhancement, generally fall short of the "fundamental miscarriage of justice" showing. *See United States v. Mikalajunas*, 186 F.3d 490, 496 (4th Cir. 1999) (concluding that alleged

7

error in enhancement for restraint of a victim is "an allegation of an ordinary misapplication of the guidelines that does not amount to a miscarriage of justice").

Moreover, claims based on supervening changes in the law do not fall outside the scope of a plea waiver. *United States v. Johnson*, 410 F.3d 137 (4th Cir. 2005). "A plea agreement, like any contract, allocates risk. 'And the possibility of a favorable change in the law occurring after a plea is one of the normal risks that accompan[ies] a guilty plea.'" *Id.* at 153 (quoting *United States v. Sahlin*, 399 F.3d 27, 31 (1st Cir. 2005)) (citation omitted) (alteration in original). As in *Johnson*, Petitioner assumed the risk of a subsequent change in the law in exchange for other benefits provided to him by the plea agreement. "Declining to enforce his [plea] waiver because of a subsequent change in the law would deprive the Government of some of the benefits of its bargain, which might ultimately work to the detriment of defendants who may find the Government less willing to offer a plea agreement." *Johnson*, 410 F.3d at 153.

In this case, Petitioner received a sentence of 188 months, well below the statutory maximum of forty years. He does not allege that the sentence imposed was based upon an impermissible factor, such as race, nor has he demonstrated that the sentence imposed was the result of ineffective assistance of counsel. There being no fundamental miscarriage of justice, Petitioner is bound by his plea waiver and is barred from challenging his enhancement as a career offender.

## II. Cognizability of Claim

As an alternative ground for dismissal, the Government argues that even if not barred by his plea waiver, Petitioner's claim is not legally cognizable under § 2255 because "non-constitutional errors, like a misapplication of Sentencing Guidelines, do 'not provide a basis for collateral attack unless [they] involve a fundamental defect which inherently results in a

8

Case 7:09-cr-00122-H   Document 86   Filed 03/06/14   Page 8 of 9

complete miscarriage of justice.'" (Govt's Mem. Supp. Mot. Dismiss [DE #72] at 17 (quoting Mikalajunas, 186 F.3d at 495-96) (alteration in original) (internal quotation marks omitted). In light of the recommended disposition of Petitioner's claim, the court need not reach this issue.

## CONCLUSION

For the foregoing reasons, it is RECOMMENDED that the Government's motion be GRANTED, Petitioner's § 2255 motion [DE #49] be DENIED and Petitioner's claim be DISMISSED for failure to state a claim upon which relief may be granted.

The Clerk shall send a copy of this Memorandum and Recommendation to counsel for the respective parties, who shall have fourteen (14) days from the date of service to file written objections. Failure to file timely, written objections shall bar an aggrieved party from obtaining de novo review by the District Judge on an issue covered in the Memorandum and, except upon grounds of plain error, from attacking on appeal the proposed factual findings and legal conclusions not objected to, and accepted by, the District Judge.

This 6th day of March 2014.

_____
KIMBERLY A. SWANK
United States Magistrate Judge